1   DANIEL G. BOGDEN
    United States Attorney
2   CARLA B. HIGGINBOTHAM (NSBN 8495)
    Assistant United States Attorney
3   100 W. Liberty Street, Ste. 600
    Reno, NV 89501
4   Telephone: (775) 784-5438
    Facsimile: (775) 784-5181
5
    Attorneys for Plaintiff
6
7                  **UNITED STATES DISTRICT COURT**
                      **DISTRICT OF NEVADA**
8                          * * * * *
9
     UNITED STATES OF AMERICA          | Case No. 3:11-cr-00055-HDM-RAM
10
                 Plaintiff,            |
11                                     | **GOVERNMENT'S RESPONSE TO**
     vs.                               | **DEFENDANT'S SENTENCING MEMORANDUM**
12
      DAVID GONZALEZ,                  |
13
                 Defendant.            |
14

15   **CERTIFICATION:** The undersigned counsel certifies that this response is timely filed.

16          The United States of America, by and through its attorneys, DANIEL G. BOGDEN,

17   United States Attorney for the District of Nevada, and CARLA B. HIGGINBOTHAM, Assistant

18   United States Attorney, hereby files this response to Defendant's Sentencing Memorandum. This

19   opposition is based upon the attached points and authorities, and such other matters as the Court

20   may wish to consider.

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

**POINTS AND AUTHORITIES**

I.    INTRODUCTION

Defendant David Gonzalez pleaded guilty to one count of receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2). The U.S. Probation Office has provided a Pre-Sentence Report (PSR) to the Court, which recommends a low-end sentence of 97 months to be followed by lifetime supervision. The Government concurs in this recommendation.

Defendant requests that the Court grant him a downward sentencing variance to only the 60 month mandatory minimum sentence required by the statute of conviction. To support this request, Defendant offers a variety of arguments to support this variance. First, Defendant argues that the sentencing guideline, in particular certain sentencing enhancements should be rejected by the Court. Defendant also argues that he should receive a sentencing variance based entirely upon his personal history and characteristics. These arguments should be rejected.[1]

II.   LEGAL ARGUMENT

A.    Defendant's Claim That The Court Should Ignore The Applicable Sentencing Guideline Must Be Rejected.

First, Defendant argues that the Court should grant a sentencing variance to only 60 months asserting that the Court should effectively ignore the applicable sentencing guideline, Section 2G2.2. Relying heavily upon *United States v. Dorvee*, a decision from the Second Circuit, Defendant asserts that the applicable guideline it is flawed because it is not based upon empirical evidence. (Def's Sent. Memo, pp. 2-5.) To support this argument, Defendant points to particular sentencing enhancements that he claims are improper because they apply in most child pornography cases. Each of these arguments lack merit and should be rejected.

///

///

---

[1] The Government will not address each and every argument raised by Defendant's Sentencing Memorandum. Rather, the Government will address only those issues that warrant a detailed explanation. The Government reserves the right to address the other issues raised by Defendant at the sentencing hearing.

1.   Defendant's Assertion That The Guideline Is Not Based Upon Empirical Evidence Should Be Rejected.

The assertion that this sentencing guideline is not based upon "empirical evidence" - but rather directed by Congress - is an argument that has been repeatedly heard and rejected by this Court. As such, the Government will not restate all of the arguments it has made in the past. Rather, the Government will simply state this. There is no dispute that following *United States v. Booker*, the Sentencing Guidelines are now advisory and not statutorily mandated. 543 U.S. 220 (2005). Therefore, the Court may, in its discretion, depart or vary from the Guidelines after consideration of the sentencing guideline range and the factors contained in 18 U.S.C. § 3553.

However, to the extent Defendant's argument for a variance is based upon his claim that the Court should ignore the guidelines based upon "policy considerations", the Ninth Circuit has already addressed these very same arguments and provided specific guidance to the district courts on how to address these claims. *See United States v. Henderson*, 649 F.3d 955 (9th Cir. 2011). In *Henderson*, the Ninth Circuit set forth the procedure that the district court must follow when considering arguments like those furthered by Defendant. First, at sentencing, the district courts must continue to start with the Sentencing Guideline range as the benchmark for the reasonable and appropriate sentence. Next, the Court must continue to consider the Section 3553 factors. Finally, if the Court chooses a sentence below the Guideline range, based upon its policy disagreement with the guideline (or for any other reason), the Court must adequately explain the basis for that disagreement in order to allow adequate appellate review on the issue. *Id*. But what is key to the *Henderson* opinion is that the Ninth Circuit **does not mandate** that district courts vary from the sentencing guideline based on policy reasons nor does the Ninth Circuit hold that as a matter of law the applicable guideline should not be followed. Rather, it is up to the sentencing court to determine - on its own accord - whether it disagrees with the applicable guideline based on a matter of public policy.

This Court has rejected these arguments in the past recognizing that the U.S. Constitution. Article I, Section 8 explicitly provides the power to Congress to set the penalties and sentencing for criminal offenses. U.S. Const. Art. I, § 8. As the Supreme Court observed, "Congress, of course,

1    has the power to fix the sentence for a federal crime, and the scope of judicial discretion with

2    respect to a sentence is subject to congressional control." *Mistretta v. United States*, 488 U.S. 361,

3    363 (1989) (citing *United States v. Wiltberger*, 18 U.S. (5 Wheat) 76, 94 (1820) (identifying "the

4    plain principle that the power of punishment is vested in the legislature, not in the judicial

5    department. It is the legislature, not the Court, which is to define a crime, and ordain its

6    punishment.")). As recently explained by the Sixth Circuit, "Congress's power to make sentencing

7    policy does not arise from a delegation from anyone ... [t]hat power instead flows **directly from**

8    **the Constitution**. And nothing in that document confines the exercise of Congress's sentencing

9    power to empirical grounds." *Bistline*, 665 F.3d 758, 764 (6th Cir. 2012) (emphasis added). Thus,

10   even assuming the truth in the contention that Congress directed a punishment for a particular

11   crime, or set of crimes, this does not mean that the sentencing guideline itself is unreasonable or

12   entitled to any less deference and should be ignored. Thus, the Government requests that this Court

13   reject again these arguments.

14            2.       The Sentencing Enhancements Contained In Section 2G2.2 Are Appropriate
     And Should Be Applied.

15

16         To support his claim that the sentencing guideline should be ignored, Defendant points to

17   two sentencing enhancements contained in Section 2G2.2 that he claims are inappropriate because

18   the enhancements apply in most child pornography cases. These enhancements are: (1) the use of

19   a computer; and (2) the number of images. These arguments should be rejected.

20         First, Defendant argues that because a large proportion of defendants receive the

21   enhancement for use of a computer, it should not be applied.  There is significant irony to

22   Defendant's claim.  The penalty was enacted to curb the explosion of child pornography on the

23   internet; the fact that internet pornography is so pernicious is not a basis to reduce penalties.

24   Indeed, there is no other area of criminal law where, when severe crime becomes more common,

25   the penalties are reduced. This argument also ignores the purpose of the enhancement. Due to the

26   wide dissemination and instantaneous transmission, computer-assisted trafficking of child

27   pornography is also more difficult for law enforcement officials to investigate and prosecute.

28   *United States v. Lebovitz*, 401 F.3d 1263, 1271 (11th Cir. 2005) (quoting H.R.Rep. No. 104-90, at

1    3-4 (1995), as reprinted in 1995 U.S.C.C.A.N. 759, 760-61). Thus, the enhancement for use of a

2    computer aims at punishing *a distinct harm* beyond the mere distribution of child. *United States*

3    *v. Tenuto*, 593 F.3d 695, 698-99 (7th Cir. 2010).

4        This is underscored by the history surrounding the enactment for increased penalties for

5    child pornography. When penalties for child pornography were first established, they were directed

6    to the receipt and distribution of child pornography via the mails. By the mid 1980's, law

7    enforcement could confidently assert that it had the resources to address the distribution of child

8    pornography and believed it to be on the decline. Pornography distribution over the internet,

9    however, emerged as its primary concern. S. Rep. 99-537 at 44; H.R. Rep. 99-910 at 4-5; *see also*

10    *United States v. Williams*, 553 U.S. 285, 306 (2008) ("child pornography harms and debases the

11    most defenseless of our citizens. Both the State and Federal Governments have sought to suppress

12    it for many years, only to find it proliferating through the new medium of the Internet.").

13        In 1995, Congress observed this emerging trend, finding "that as the use of computers and

14    the use of electronic communications increase for people in business and personal use, it has,

15    unfortunately, also increased for criminal use, including the sale of pornographic materials." 141

16    Cong.Rec. H4122-01 at H4123. As a result, Congress sought not only to toughen penalties for

17    child pornography and child exploitation, but also to address the impact of the rise of internet usage

18    on these crimes. *Id.* It therefore enacted the Sex Crimes Against Children Prevention Act of 1995

19    (SCACPA), Pub. L. 104-71, directing the Sentencing Commission to raise the Base Offense Level

20    and to add an enhancement in cases under 18 U.S.C. § 2251(c)(1)(A) or § 2252(a)(1)-(3) where a

21    computer was used to "transmit the notice of" or "transport or ship" the images. H.R. REP. 104-90.

22    Congress provided ample justification for application of the enhancement not only to distribution,

23    but also to receipt and possession. While the Commission has subsequently suggested further

24    refinements to the application of this minor enhancement, based on the greater impact of a large-

25    scale distributor of pornography versus someone who downloaded pornography for his own use,

26

27

28

Congress provided reasonable justification for applying the enhancement to any use of a computer, particularly emphasizing the difficulty of detecting consumption of child pornography.[2]

_____

[2] The House Judiciary Committee Report on SCACPA found that computer transmission of child pornography presented a threat to children: "Distributing child pornography through computers is particularly harmful because it can reach an almost limitless audience.  Because of its wide dissemination and instantaneous transmission, computer-assisted trafficking is also more difficult for law enforcement officials to investigate and prosecute." H.R. Rep. 104-90.  Furthermore, the use of a computer for transmission increases the likelihood that children may see the images and that "pedophiles may use a child's fascination with computer technology as a lure to drag children into sexual relationships." Id.  Although these rationales apply to possession as well as distribution of pornography, the initial legislation proposed in the House only applied the enhancement for use of a computer to distribution.

Senators Grassley, Hatch, Thurmond, Thompson and Roth offered Amendment 595 to H.R. 1240, which included application of the enhancement for use of a computer to possession. 141 Cong. Rec. S5509-12, S5519-02.  Senator Grassley specifically spoke about the need to make penalties for various violations of child pornography statutes stronger when a computer was used, whether for distribution or for possession:

> Computers are now the preferred business forum for child pornographers.  Due to modern technology, predatory pedophiles sell, purchase and swap the most vile depictions of children engaged in the most outrageous types of sexual conduct. Simply put, child pornography on computers is dangerous and must be stopped. In the past, whenever State or Federal law enforcement agents arrested a child pornographer, or ring of child pornographers, they seized and then destroyed the child pornography. This kept child pornography out of the hands of child molesters and preserved the privacy of the children who had been so callously exploited. But now, because of digital computer technology, it is nearly impossible to actually destroy child pornography. That means there will be more child pornography for child molesters and less privacy for abused children. We in Congress must do something.  H.R. 1240 and the Grassley-Hatch-Thurmond amendment would discourage child pornographers from using computers to trade in child pornography. And when the U.S. Sentencing Commission reports to us this fall on how computer child pornographers are being punished, I will take a close look to see if there is anything the Senate can do to provide even more protection to children.

141 Cong. Rec. S5509-02.  The amended bill passed with unanimous consent in the Senate and then was sent back to the House.  There, Rep. Schumer explained that the Senate amendment better reflects the House's original intent: "this bill strengthens the punishment for sexual crimes involving children . . . . On behalf of the Crime Subcommittee, I am satisfied that the changes made in the other body actually strengthen the bill and I have no objection to them."  141 Cong. Rec. H14319-02.

1    Moreover, the harms cause by the use of computers to commit this offense only increased

2   in the next decade.  A bipartisan staff report of the House Committee on Energy and Commerce

3   recently emphasized that, as the market for child pornography had exploded in the past 15 years

4   through the Internet, and technology has enabled the exchange of greater number of images, child

5   pornography has been increasing vastly in amount, and depictions are of younger children and more

6   violent.[3]

7    The enhancement is common because the harm caused by the use of the computer is

8   extremely common; use of a computer is not, however, any less pernicious than it was when

9   Congress and the Commission first raised the possibility of an enhancement.   In fact, the

10   Sentencing Commission anticipated that the use of computer enhancement would apply in most

11   child pornography cases.  For that reason, the Sentencing Commission *lowered* the base offense

12   level    for    the    crimes    to    account    for    this.    *See*

13   http://www.ussc.gov/Research/Research_Projects/Sex_Offenses/20091030_History_Child_Por

14   nography_Guidelines.pdfhttp://www.ussc.gov/Research/Research_Projects/Sex_Offenses/2009

15   1030_History_Child_Pornography_Guidelines.pdf, p. 46.   As such, the use of a computer is

16   properly penalized more significantly than receipt or distribution by mail because of the far greater

17   accessibility and spread of the images, which increases the market for child pornography - which

18   was exactly what Congress was attempting to curtail with the increased penalties crimes.

19    These same holds true with the number of images enhancement. The "number of image"

20   enhancement is intended to differentiate between large collectors of child pornography from those

21   with smaller collections of these materials.[4] To the extent that the "600 or image" enhancement

22

23   [3]  See January 2007 bipartisan staff report of the House Committee on Energy and Commerce,
24   "Sexual Exploitation of Children over the Internet,"109th Congress, 2nd Session.

25   [4]It should be noted that due to the evolution of the manner in which child pornography offenders
     engage in their illegal conduct, this enhancement does not make these differentiations
26   appropriately. Increasingly, offenders who distribute, receive and possess child pornography
     delete the videos and images after they use them for sexual gratification. As such, a small
27   collection of child pornography does not necessarily mean that the offender is less involved in
     this type of illegal conduct. In fact, some offenders who are found in possession of only small
28   amounts of child pornography can be just as serious, or sometimes even more serious, than as

1  applies in many cases, this is often the case because defendants who possess videos of child

2  pornography reach the 600 image count faster under the guideline because every video equates to

3  75 images. *See* USSG 2G2.2, Comment (4)(B) (each video of child pornography is equivalent to

4  75 images). There is a good rationale for the application of this difference. The calculation of the

5  images per video was inserted into the federal sentencing guidelines in 2004, in response to the

6  passage of the PROTECT Act. In October 2009, the United States Sentencing Commission issued

7  a report entitled, "The History of the Child Pornography Guidelines," wherein the Commission

8  specifically explained the process and all evidence and matters considered by the Commission in

9  making its determination to assign 75 images for each video. United States Sentencing

10  Commission, *The History of he Child Pornography Guidelines*, pp. 42-43 (Oct. 2009). This report

11  stated that:

> the Commission had to define the term "images," quantify video images, and implement the directive. The Federal Defenders suggested that an "'image' should be defined in terms of a single item such as one photograph or video rather than by reference to each frame in a video or each person depicted." By contrast, the DOJ took the position that "a definition that treated a video/movie and a still image as both being one image . . . would be arbitrary" and instead suggested each moving image be subject to a 2- or 3-level enhancement. The Commission ultimately determined that because each video contained multiple images it should be counted as more than one image. Given that the image table enacted by Congress assigned a 2-level increase for between ten images and 150 images, and a 3-level increase for 150 to 300 images, the Commission adopted a definition of video that considered each video to contain 75 images, squarely in the middle of the 2-level increase range. The Commission also expressly authorized an upward departure if the video was substantially longer than five minutes. Additionally, effective implementation of the image table required the Commission to delete the previously promulgated specific offense characteristic relating to the number of items of child pornography, formerly §2G2.4(b)(3). The Commission made this adjustment to prevent instances of "double counting."

22  *Id.* at pp. 42-43. The report specifically noted that the Commission took into account information

23  provided by the Motion Picture Association stating that one second of video contains 24 frames;

24  therefore, if each frame were counted there would be 1,440 frames in every one minute of video.

25  *Id.* at p. 42, n.201. Therefore, both enhancements are appropriate and should not be ignored.

26  ///

27

28
———————————

those offenders who are located with larger collections.

3.   Variant Sentences In Other Child Pornography Cases Do Not Support Ignoring Section 2G2.2.

Finally, Defendant asserts that "53% of all sentences imposed pursuant to this guideline f[a]ll below the advisory guideline range" and thus the Court should ignore the sentencing guideline and impose a variant sentence. (Def's Sent. Memo, p. 4). For this proposition, Defendant relies upon a table created by the sentencing commission. (*Id.* at p. 4, n.1). However, approximately 41% of **all** federal cases sentenced in 2009 were sentenced below the applicable sentencing guideline range. *2009 Sourcebook of Federal Sentencing Statistics*, Table N, available at http://www.ussc.gov/Data_and_Statistics/Annual_Reports_and_Sourcebooks/2009/TableN.pdf (lasted visited 10/12/2012). There is not a significant difference between the percentage of child pornography cases sentenced below the guidelines and all other federal crimes.

While it is true that there many cases in which the Courts across the country have granted sentencing variances in child pornography cases, there are also a significant number of courts from across the country that have imposed guideline sentences in child pornography cases. Examples of these cases include:

*See eg.*; *United States v. Rosenberg*, 2011 WL 2007969 (2nd Cir. May 24, 2011); *United States v. Davis*, 2010 WL 4908931 (2nd Cir. Dec. 3, 2010) (unpublished); *United States v. Elston*, 2011 WL 1420512 (3rd Cir. Apr. 11, 2011); *United States v. Stabile*, 2011 WL 294036 (3rd Cir. Feb 1, 2011); *United States v. McMickens*, 373 Fed.Appx. 226 (3rd Cir. 2010) (unpublished); *United States v. Humanik*, 2011 WL 240535 (3rd Cir. Jan. 27, 2011) (unpublished); *United States v. Garcia*, 402 Fed. Appx. 768 (4th Cir. 2010) (unpublished); *United States v. McKee*, 2010 WL 1664081 (D.Md. April 21, 2010) (unpublished); *United States v. Bailey,* 2011 WL 1564036 (6th Cir. Apr. 26, 2011) (unpublished); *United States v. Warner*, 399 Fed.Appx. 88 (6th Cir. 2010) (unpublished); *United States v. McNerney,* 2011 WL 691178 (6th Cir. March 1, 2011); *United States v. Armes,* 2011 WL 1188439 (7th Cir. Mar. 31, 2011)*; United States v. Mantanes,* 632 F.3d 372 (7th Cir. 2011); *United States v. Coopman*, 602 F.3d 814 (7th Cir. 2010); *United States v. Maulding,* 627 F.3d 285 (7th Cir. 2010); *United States v. Rodgers,* 610 F.3d 975 (7th Cir. 2010); *United States v. Koch*, 625 F.3d 470 (8th Cir. 2010); *United States v. Bauer,* 626 F.3d 1004 (8th Cir. 2010); *United States v. Sampson,* 606 F.3d 505 (8th Cir. 2010); *United States v. Maier,* 2011 WL 1565474 (9th Cir. Apr. 27, 2011); *United States v. Carlson,* 395 Fed.Appx. 413 (9th Cir. 2010) (unpublished); *United States v. Blinkinsop,* 606 F.3d 1110 (9th Cir. 2010); *United States v. Goldberg*, 295 F.3d 1133 (10th Cir. 2002); *United States v. Ilgen,* 2011 WL 1097539 (10th Cir. Mar. 25, 2011); *United States v. Regan,* 627 F.3d 1348 (10th Cir. 2010); *United States v. McDaniel*, 631 F.3d 1204 (11th Cir. 2011)*; United States v. Stearman,* 2010 WL 5297165 (M.D. Fla. Dec. 20, 2010); *United States v. Wayerski,* 624 F.3d 1342 (11th Cir. 2010); *United States v. Turner,* 626 F.3d

566 (11th Cir. 2010); and *United States v. Alfaro-Moncada*, 607 F.3d 720 (11th Cir. 2010).

In addition, the majority of child pornography defendants in the District of Nevada that were sentenced between March 2010 to 2012 received guideline sentences. *(See* Gov't Exhibit A, Sentencing Table Nevada.) The implicit assertion that this Court should ignore the applicable sentencing guideline in this case because many other courts have done so in the past, should be rejected.

C.    A Guideline Sentence Is Proper Under the 18 U.S.C. § 3553 Factors.

Defendant also argues that a sentence of only 60 months would be appropriate in this case based upon the Section 3553 factors. This request is based almost entirely upon the history and characteristics of Defendant. However, this is by no means the only factor that should be considered by the Court in fashioning a sentence in this case. Rather, when imposing a sentence, the Court is not only required to consider the guidelines, but it must fashion a sentence that "is sufficient but not greater than necessary" to comply with the factors detailed in 18 U.S.C. § 3553(a). This requires the court to consider the following:

> 1. the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> 2.   the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(1)-(2). In this instance, it is the Government's position that a sentence of 97 months to be followed by lifetime supervision is reasonable and appropriate in light of the factors set forth in 18 U.S.C. § 3553(a).

///

///

1.       Nature and Circumstances of Offense

In arguing for a sentencing variance, Defendant entirely ignores the nature and circumstances of the offense he committed. These facts are detailed in the PSR and will not be repeated here. However, there are some aspects to the offense that must be highlighted.

Defendant's use of child pornography was not a crime that happened to him. "It is not a crime of inadvertence, of pop-up screens or viruses that incriminate an innocent person." *See United States v. Bistline*, 665 F.3d 758, 765 (6th Cir. 2012). Nor was Defendant's criminal conduct something that occurred on one specific date at one specific time. Rather, Defendant repeatedly committed this crime over and over and over again.  In fact, Defendant knowingly and deliberately sought out and downloaded child pornography over the Internet over many years.

Over these many years, Defendant amassed a very large collection of child pornography, which consisted of a substantial number of child pornography videos. Specifically, the forensic examination revealed that Defendant possessed **1,175 videos** and **915 still images**  of child pornography. PSR, ¶ 18.  Under the sentencing guidelines, this is equivalent to **89,040 images**. *See* USSG § 2G2.2, Comment (4)(B) (each video of child pornography is equivalent to 75 images). If a picture is worth a thousand words, a video of child pornography will leaves a person speechless. Videos of child pornography are particularly heinous because they depict the entire abuse of a child - from start to finish. Videos are also accompanied by sounds - often disturbing sounds - revealing the pain and suffering of the children being abused. Amassing over 1,000 video files is particularly egregious.

Finally, this is not a victimless crime. Each and every child in every video and image in Defendant's collection is a victim in this case. Following the forensic examinations, the images and videos of child pornography located on Defendant's devices were submitted to the National Center for Missing and Exploited Children (NCMEC) to determine whether any of the images or videos depicted previously identified victims of child pornography. NCMEC determined that Defendant's collection depicted **over 64** previously identified victims. Victims of this crime have previously described the pain and suffering that they experience - not because of the underlying sexual victimization – but specifically related to the fact that individuals, like Defendant, download and

11

possess images of their abuse. For example, one victim "Vicky" explains:

> I am 19 years old and am living everyday with the horrible knowledge that someone somewhere is watching the most terrifying moments of my life and taking grotesque pleasure in them. I am a victim of the worst kind of exploitation: child porn. Unlike other forms of exploitation, this one is never ending. Everyday people are trading and sharing videos of me as a little girl being raped in the most sadistic ways. They don't know me but they have seen every part of me. They are being entertained by my shame and pain.
>
> . . .
>
> These past years have only showed me the enormity of the circulation of these images and added to my grief and pain.
>
> . . .
>
> Because the most intimate parts of me are being viewed by thousands of strangers and traded around, I feel out of control. They are trading my trauma around like treats at a party, but it is far from innocent. It feels like I am being raped by each and every one of them.
>
> . . .
>
> So many nights I have cried myself to sleep thinking of a stranger somewhere staring at their computer with images of a naked me on the screen.
>
> . . .
>
> Some of these perverts have tried to contact me.
>
> . . .
>
> Every time they are downloaded I am exploited again, my privacy is breached, and my life feels less and less safe. I will never be able to have control over who sees me raped as a child. It's all out there for the world to see and it can never be removed from the internet. I only ask that those who have exploited me be brought to justice to hopefully deter some others from doing the same and to lessen my shame.

(*See* Vicky Victim Impact Statement.) All of the victims of Defendant's crime, like Vicky, suffer based upon the distribution and possession of images and videos of their abuse. These images of child pornography depict the worst and most intimate days of a child's life - the day that they were raped, tortured, assaulted, and/or abused by another - often times by someone they trusted - like a father, uncle, friend or coach. These are nothing less than crime scene photos.

Defendant's Sentencing Memorandum does not address the facts or circumstances of his crime. Therefore, Defendant's assertion that a variant sentence to only 60 months entirely ignores the full nature and circumstance of his offense as well as the fact that each time he viewed and downloaded child pornography, he victimized the children depicted in those images.

///

2.      Characteristics of Defendant

Defendant has identified several characteristics about himself and his history that he claims supports a sentencing variance. He points to his mental health issues, his past physical and sexual abuse, and his psychologist's claim that he is a "low-risk" of contact offending or committing additional crimes. None of the factors or characteristics pointed to by Defendant, either alone or taken together, support a sentence outside of the applicable guideline range.

The Government does not contest that Defendant suffers from some mental issues. That cannot and will not be denied. However, these mental issues have been purposefully exaggerated and embellished by Defendant in order to manipulate these proceedings. *(See* Def's Ex. 4, p. 5.) Specifically, Dr. Mahaffey's most recent report states:

> [Defendant] heard from other prisoners that if he were to [sic] found crazy and not competent to stand trial, that he would not be prosecuted. Considering such, he attempted to do poorly psychological tests in an attempt to appear crazy. Eventually, he learned from staff that if he was found not competent to stand trial that he could be involuntarily committed for an extended period of time. Thereafter, he stopped trying to appear crazy.

(Id.) Due to Defendant's own dishonesty and lack of candor with the Court, it is virtually impossible to know or quantify the true nature or extend of Defendant's mental issues at this time. As such, the Court should look to Defendant's mental functioning at the time he committed the offense to determine if any variance is warranted. At the time Defendant was interviewed during the investigation and taken into custody, Defendant was coherent, had no "ticks" or other behaviors that were suspect, answered the investigators questions with appropriate answers, he understood right from wrong, and the like.[5] In addition, Defendant was functioning at a very normal level. He was employed at Best Buy, he had previously taken college classes, he was able to drive, and the like. Thus, committed the instant offense, Defendant's mental issues did not appear to effect Defendant in such as to support a sentencing variance.

In addition, the Government can neither confirm nor deny that Defendant was abused either

---

[5]This interview was both audio and video recorded. The Government will provide a copy of this interview upon request.

physically or sexually as a child.  These claims may be true. However, these assertions do not mitigate Defendant's conduct. To the contrary, if Defendant was the victim of sexual abuse as a child, the fact that he committed this crime is an aggravating factor. As a former victim of sexual abuse, Defendant knew better than ANYONE how damaging the sexual abuse was to the children being molested and abused in the thousands of videos and images that he possessed. He knew their pain and suffering. He knew how that abuse could and would effect them throughout their lives. And yet, he consciously and deliberately downloaded and received thousands of files depicting the sexual abuse and suffering of other children, which he used to masturbate to "every other day." (PSR, ¶ 14).[6] Defendant's own abuse does not excuse this conduct nor does it mitigate his role in the criminal offense.

Finally, Defendant asserts that a downward variance would be appropriate because his hired psychologist has determined that he is a "low-risk" of either contact offending with a child or being a recidivist. However, when the basis for this conclusion is reviewed critically, it does not hold up. As a starting point, the Court should keep in mind that regardless of what an offender may claim, "[a]n offender's pornography and erotica collection is the single best indicator of what he wants to do." Kenneth V. Lanning, *Office of Juvenile Justice and Delinquency Prevention, Child Molesters: A Behavioral Analysis–For Professionals Investigating the Sexual Exploitation of Children*, 107 (5th ed. 2010).  Defendant's psychologist never viewed the child pornography collection amassed by Defendant.

In addition, the basis for the "low-risk" assessment is based upon the determination that several risk factors were "not present" in this case. (*See* Def. Ex. 4, p. 15). However, the conclusion that these factors are not present is based almost entirely upon the self-reported statements given by Defendant and the lack of previous criminal charges or convictions. For example, Defendant

---

[6]Defendant's attempt to rely upon his prior sexual abuse as a mitigating factor should be viewed critically by the Court. Defendant's assertions are based entirely upon his own self-reports. However, "when verified by polygraph, the numbers of the offenders' prior victims rise significantly, while the percentage of offenders who experienced victimization in their own lives drops significantly." Jan Hindman, *"Polygraph testing leads to better understanding adult and juvenile sex offenders"*, Federal Probation Journal, Vol. 65(3), Dec. 2001, pp. 8-15 (Table A).

1   claimed he never committed any hands on offenses and he was never charged with such a crime.

2   Based on this self-report, it was concluded that this risk factor was not present. (Def's Ex. 4, p. 15-

3   16). Defendant self-reported he never engaged in any other sexual offenses and he was never

4   charged with a crime of this nature. (*Id*.). It was again concluded this risk factor was not present.

5   There are approximately 10 similar conclusions that were used to conclude Defendant is a "low-

6   risk." (*Id*.). No test appears to have been used to attempt to verify the truth or veracity of

7   Defendant's self-reports, i.e., no polygraph exam was conduct, voice stress test, or the like.

8          In the normal child pornography or sexual abuse case, self-reports should be viewed very

9   skeptically when conducting a risk assessment of a sex offender. *See, for example*, Colorado Sex

10  Offender Management Board, Standards and Guidelines for the Assessment, Evaluation,

11  Treatment, and Behavioral Monitoring of Adult Sex Offenders, p. 19 (Revised June 2000) ("The

12  evaluator should be cognizant that ***an offender's self-report is demonstrated by research to be the***

13  ***least reliable source of information*** during the evaluation, and should take steps not to rely solely

14  upon self-report information.") (emphasis added). In this case, however, that skepticism is

15  exponentially heightened because Defendant admitted to embellishing or minimizing his prior

16  conduct and mental health issues in virtually all of the psychological evaluations conducted by the

17  various psychologists in this case. (*See* Def's Ex. 4, 5; *See also* Forensic Report U.S. Bureau of

18  Prisons dated May 18, 2012 (previously delivered to Court by BOP)). Consequently, Defendant's

19  self-reports mean very little.

20          Defendant's lack of prior criminal history also adds very little and does not corroborate

21  Defendant's self-reports. This case is a prime example of this fact. Defendant committed that crime

22  of possessing and receiving child pornography for many years without ever being detected,

23  investigated, charged or convicted for his crimes. Sex offenses, particularly the contact offenses

24  of children, are historically under-reported crimes. Therefore, the fact that Defendant was never

25  charged with or convicted does not provide any corroboration to Defendant's self-reported

26  statements. In sum, none of Defendant's personal characteristics and history support the variance

27  requested.

28

III.     CONCLUSION

In sum, the Government requests that the Court adopt the sentencing recommendation contained in the PSR and sentence Defendant to 97 months in prison to be followed by lifetime supervision.

DATED this 22th day of October, 2012

Respectfully submitted,

DANIEL G. BOGDEN
United States Attorney

CARLA B. HIGGINBOTHAM
Assistant United States Attorney

## CERTIFICATE OF SERVICE

The undersigned hereby certifies, under penalty of perjury, that I am employee in the Office of the United States Attorney for the District of Nevada and that pursuant to LCR 47-11, I caused to be electronically filed on this date, a true and correct copy of the **GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM** with the Clerk of the Court using the CM/ECF system, which will automatically e-serve the same on the attorneys of record set forth below:

Thomas E. Viloria, Esq.
Fahrendorf, Viloria, Oliphant & Oster LLP
P.O. Box 3677
Reno, NV 89509

Email: **tviloria@renonvlaw.com**

Dated this 22nd day of October, 2012

By: _Jeidy K. Farmer_

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit A

Child Pornography Sentencing Data - District of Nevada
March 2010-March 2012

| | Case Name | Case Number | Charge | Sentence Date | G/R | Sentence | S/R | Fine | Res. | Variance Months |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | US v. Vanleishout | 3:09-cr-00043-ECR | Possession | 3/8/2010 | 30-37 | 24 | 20 years | 0 | 0 | -6 |
| 2 | US v. Psick | 3:09-cr-00074-HDM | Possession | 3/17/2010 | 63-78 | 63 | 5 years | 0 | 0 | 0 |
| 3 | US v. Urich | 3:10-cr-00034-ECR | Possession | 3/26/2010 | 78-94 | 44 | 5 years | 0 | 0 | -34 |
| 4 | US v. Richardson | 3:09-cr-00033-LRH | Possession | 4/12/2010 | 78-97 | 24 | 20 years | 0 | 0 | -54 |
| 5 | US v. Hoffman | 2:08-cr-27-RCJ | Transport & Stalking | 4/26/2010 | 292-300 | 300 | Life | 0 | $152K | 0 |
| 6 | US v. Irvine | 2:08-cr-340-RCJ | Receipt/ Coercion | 5/10/2010 | 108-135 | 120 | Life | 0 | 0 | 0 |
| 7 | US v. Goldsberry | 2:09-cr-469-KJD | Receipt | 5/12/2010 | 63-78 | 63 | Life | 0 | 0 | 0 |
| 8 | US v. Williamson | 3:09-cr-00093-LRH | Possession | 6/7/2010 | 37-46 | 18 | 10 years | 0 | 0 | -19 |
| 9 | US v. Rivera | 2:09-cr-187-KJD | Possession | 6/16/2010 | 37-46 | 37 | 3 years | 0 | 0 | 0 |
| 10 | US v. Rees | 3:09-cr-00102-RCJ | Possession | 7/19/2010 | 78-97 | 60 | Life | 0 | 0 | -18 |
| 11 | US v. Buitre | 2:09-cr-00297-RLH | Receipt | 7/21/2010 | 63-78 | 60 | Life | 0 | $1K | -3 |
| 12 | US v. Cornista | 2:09-cr-418-RCJ | Receipt | 8/3/2010 | 97-121 | 97 | Life | 0 | 0 | 0 |
| 13 | US v. Sheesley | 3:09-cr-00101-LRH | Possession | 8/9/2010 | 37-46 | 24 | Life | 0 | 0 | -13 |
| 14 | US v. Chanley | 2:07-cr-150-LDG | Receipt | 8/31/2010 | 210-262 | 210 | Life | 0 | 0 | 0 |
| 15 | US v. Hallock | 2:06-cr-396-JCM | Receipt | 9/7/2010 | 188-235 | 180 | Life | 0 | 0 | -8 |
| 16 | US v. Van Doren | 2:10-cr-17-KJD | Receipt | 9/13/2010 | 78-97 | 78 | Life | 0 | $2K | 0 |
| 17 | US v. Burke | 3:10-cr-00040-LRH | Possession | 10/14/2010 | 70-87 | 60 | Life | 0 | 0 | -10 |

1

Child Pornography Sentencing Data - District of Nevada
March 2010-March 2012

| | Case Name | Case Number | Charge | Sentence Date | G/R | Sentence | S/R | Fine | Res. | Variance Months |
|---|---|---|---|---|---|---|---|---|---|---|
| 18 | US v. Williams | 3:10-cr-00023-RCJ | Advertising | 10/18/2010 | 188-235 | 180 | Life | 0 | 0 | -8 |
| 19 | US v. Schweizer | 3:09-cr-00053-LRH | Possession | 10/20/2010 | 78-97 | 60 | Life | 0 | 0 | -18 |
| 20 | US v. Duke | 2:09-cr-437-GMN | Receipt | 11/9/2010 | 97-121 | 97 | Life | 0 | $2K | 0 |
| 21 | US v. Hatmaker | 3:10-cr-00044-ECR | Possession | 12/10/2010 | 51-63 | 51 | 10 years | $10K | $3K | 0 |
| 22 | US v. Balbo | 2:10-cr-00165-ECR | Receipt | 1/7/2011 | 63-78 | 63 | Life | 0 | 0 | 0 |
| 23 | US v. Loeffler | 3:10-cr-00046-LRH | Possession | 1/10/2011 | 78-97 | 78 | Life | 0 | $10K | 0 |
| 24 | US v. Brown, R. | 3:10-cr-00134-ECR | Attempted Receipt | 1/17/2011 | 37-46 | 60 | Life | 0 | 0 | 14 |
| 25 | US v. Zwierzycki | 2:09-cr-449-RLH | Receipt | 1/31/2011 | 97-121 | 97 | Life | 0 | 0 | 0 |
| 26 | US v. Cooper | 3:10-cr-00019-LRH | Possession | 2/3/2011 | 87-108 | 36 | 20 years | 0 | 0 | -51 |
| 27 | US v. Jackson | 3:10-cr-00045-LRH | Possession | 3/4/2011 | 78-97 | 63 | Life | 0 | 0 | -15 |
| 28 | US v. Tucker | 3:10-cr-00090-LRH | Distribution & Receipt | 4/18/2011 | 87-108 | 60 | 20 years | 0 | 0 | -27 |
| 29 | US v. Hartford | 3:10-cr-00113-HDM | Possession | 5/27/2011 | 78-97 | 60 | 10 years | 0 | 0 | -18 |
| 30 | US v. Edrington | 2-10-cr-362-PMP | Receipt | 6/10/2011 | 78-97 | 78 | Life | 0 | 0 | 0 |
| 31 | US v. Gomez | 3:10-cr-00108-LRH | Receipt | 6/15/2011 | 97-121 | 60 | 25 years | 0 | 0 | -37 |
| 32 | US v. Spratt | 3:11-cr-00027-LRH | Possession | 7/19/2011 | 37-46 | 24 | 12 years | $5K | 0 | -13 |
| 33 | US v. Maestro | 2:09-cr-177-JCM | Receipt | 7/25/2011 | 97-121 | 97 | Life | 0 | 0 | 0 |
| 34 | US v. Dixon | 3:10-cr-00113-ECR | Possession | 8/23/2011 | 51-63 | 37 | 15 years | 0 | 0 | -14 |

2

Child Pornography Sentencing Data - District of Nevada
March 2010-March 2012

|  | Case Name | Case Number | Charge | Sentence Date | G/R | Sentence | S/R | Fine | Res. | Variance Months |
|---|---|---|---|---|---|---|---|---|---|---|
| 35 | US v. Higley | 3:11-cr-00016-ECR | Production | 10/11/2011 | 210-262 | 180 | Life | 0 | 0 | -30 |
| 36 | US v. Rice | 2:10-cr-507-LRH | Receipt | 10/12/2011 | 97-121 | 85 | Life | 0 | 0 | -12 |
| 37 | US v. Snider | 3:10-cr-00132-ECR | Possession | 11/21/2011 | 70-87 | 46 | 10 years | 0 | 0 | -24 |
| 38 | US v. Snyder | 2:10-cr-554-LDG | Receipt | 12/2/2011 | 121-151 | 120 | Life | 0 | 0 | -1 |
| 39 | US v. Estes | 3:10-cr-00141-RCJ | Possession | 12/16/2011 | 78-97 | 48 | 20 years | 0 | 0 | -30 |
| 40 | US v. Wallace | 2:11-cr-00094-PMP | Receipt | 1/9/2012 | 97-121 | 97 | Life | 0 | 0 | 0 |
| 41 | US v. Brown, J. | 3:10-cr-00134-ECR | Attempted Production | 1/18/2012 | 151-188 | 180 | Life | 0 | 0 | 0 |
| 42 | US v. Reeves | 3:11-cr-00092-LRH | Possession | 1/23/2012 | 51-63 | 36 | 20 years | $1K | 0 | -15 |
| 43 | US v. Lazarus | 2:11-cr-132-RLH | Receipt | 2/10/2012 | 97-121 | 97 | Life | 0 | 0 | 0 |
| 44 | US v. Walker | 3:10-cr-00136-RCJ | Possession | 2/13/2012 | 78-97 | 60 | Life | $5K | 0 | -18 |
| 45 | US v. Roth | 3:10-cr-00135-RCJ | Possession | 2/21/2012 | 135-168 | 168 | Life | 0 | 0 | 0 |
| 46 | US v. Hassey | 2:11-cr-231-HDM | Receipt | 2/28/2012 | 97-121 | 97 | Life | 0 | 0 | 0 |

3